IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEBRA K. HUFFMAN-EDDY

    Plaintiff,                      No. CIV S-04-0648 CMK

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.                 <u>ORDER</u>

_____/

        Plaintiff, Debra K. Huffman-Eddy, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security (Commissioner) denying her claim for a period of disability and disability insurance benefits (hereinafter DIB) under the provisions of Title II of the Social Security Act.  The parties have filed cross motions for summary judgment.  As both parties have consented to magistrate jurisdiction, the motions are before the undersigned for decision.  For the reasons reflected below, plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

///

///

///

## I. BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on April 25, 2002, alleging an inability to work due to multiple sclerosis. (Tr. 44, 55). Plaintiff alleged that she had been disabled since May 24, 1993. (Tr. 44, 55.) Plaintiff earned sufficient quarters of disability insurance to remain insured for benefits only through June 30, 1996.[1] (Tr. 16.)

Plaintiff's application was denied initially and upon reconsideration. A hearing was held before an administrative law judge (ALJ) on March 11, 2003. (Tr. 207.) Plaintiff represented herself at the hearing before the ALJ . (Tr. 207.) The ALJ informed her of her right to have an attorney or some other person represent her and told her that there were some "complicating factors" in her case; namely that her entitlement to Social Security depended on her ability to show that she was disabled beginning on or before June 30, 1996, which was the date she was last insured for disability benefits. (Tr. 209-210, 220) The ALJ offered to postpone the hearing so that plaintiff could get representation. (Tr. 207, 210-211.) Plaintiff declined. (Tr. 207.) Plaintiff's relevant hearing testimony was as follows.

Plaintiff testified that she had earned a bachelor of arts degree and had past work experience as a real estate agent, secretary, juvenile counselor and title researcher. (Tr. 212-14.) Plaintiff stated that she was diagnosed with multiple sclerosis in 1993. (Tr. 213.) She testified that she stopped working as a real estate agent in 1994 because she could no longer take clients to look at properties. (Tr. 216.) Plaintiff stated that she did not know why she did not look for other work and also stated that she did not feel that she would be a "good...employer [sic] for somebody." (Tr. 217.)

///

---

[1] To qualify for DIB, a claimant must be fully insured and have at least twenty quarters of coverage in the forty-quarter period which ends with the quarter in which the disability occurred. See 42 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b). The termination of a claimant's insured status is sometimes referred to as "date last insured."

After 1993, plaintiff stopped treatment with her physician, Dr. Garaghty, because she went into "remission." (Tr. 217.) Plaintiff tried to use alternative medicine, such as acupuncture, to control her multiple sclerosis. (Tr. 217.) In mid-1996, when her alternative medicine no longer worked she saw Kurtis H. Fox M.D. (Tr. 217-18.) Plaintiff was referred to William J. Au, M.D.[2] in Sacramento, who reassessed plaintiff in September of 1996 to determine if she really had multiple sclerosis. (Tr. 218.) Dr. Au did several tests and ordered an MRI, all of which conformed plaintiff's diagnosis. (Tr. 219.)

Plaintiff testified that she has problems with heat. (Tr. 226.) She stated that she naps daily and portioned her housework out over a period of days. (Tr. 227.) Plaintiff has some problems with memory and can no longer drive a stick shift. (Tr. 230.) She uses a cane for walking because a neighbor forced it on her. (Tr. 230.) Plaintiff testified that, other than instructing her son how to make his lunch, she basically "did nothing" in 1996, besides "getting up." (Tr. 229.) Plaintiff stated that she sometimes neglects to mention problems that she has been having to her treating physican Dr. Au. (Tr. 238.) Plaintiff also admitted that, although her problems began at least by 1996, she did not apply for social security until 2002. (Tr. 219-20.)

Plaintiff's husband, Ezera Eddy, also testified at the hearing. He stated that she had problems walking up and down stairs and required a cane. (Tr. 224-25.) He also stated that plaintiff tends not to relate her symptoms to her physican because she "does not want to be a whiner" and "is [in] denial of having [multiple sclerosis]." (Tr. 223.) He testified that plaintiff has to take a lot of breaks during the day, cannot do anything for any length of time without resting and must take naps during the day. (Tr. 222.) Mr. Eddy testified that plaintiff was doing the "same thing" in 1996. (Tr. 224.)

///

///

---

[2]Dr. Au is referred to as "Dr. Al." in the hearing transcript.

3

Medical expert Sukhdev S. Kangura, M.D. testified that plaintiff's testimony regarding her subjective complaints near the time of last insured "kind of goes in a contrast" with Dr. Au's clinical notes from April of 1997. (Tr. 233.) Dr. Kangura stated that it was possible that some people do not complain that much and that may be why plaintiff's complaints, which she related in her testimony, were not included in Dr. Au's notes. (Tr. 235.) Dr. Kangura testified that he did not see any evidence indicating that plaintiff met or equaled a Listing on the her date last insured. (Tr. 240.)

At the end of the hearing, the ALJ invited plaintiff to submit a written statement explaining her limitations prior to her last insured date and asked her to have Dr. Au provide an opinion of plaintiff's functional ability at the date she was last insured. (Tr. 241, 250-52.) Plaintiff submitted a letter detailing her limitations prior to her date last insured. (Tr. 97.) Her letter stated that, in 1995, she had exacerbations,[3] which seemed more frequent and severe than her present exacerbations did. (Tr. 98.) She related that she had written in her journal about her fears of incontinence and her problems speaking. (Tr. 97.) In May of 1995, plaintiff recorded numbness in her torso and vision problems. (Tr. 98.) Her letter stated that her multiple sclerosis was overwhelming for her. (Tr. 98.) She related that, in December of 1995, she was "spinning" and experiencing vertigo. (Tr. 98.) She wrote that she spent bad days in bed and had trouble picking up objects due to hand numbness. (Tr. 98.) At plaintiff's request, Dr. Au wrote a letter to the ALJ stating that the symptoms described in plaintiff's April 7, 2003, letter were all credible and common in patients with multiple sclerosis. (Tr. 188.)

The relevant medical evidence in this case reflects the following. In May of 1991 and March of 1993, plaintiff complained of leg pain to John Geraghty, M.D., but she reported no weakness, trouble walking or any other functional limitation. (Tr. 199-1002.) In March of 1993,

---

[3] An exacerbation is a sudden worsening of an MS symptom or symptoms, or the appearance of new symptoms. See http://www.nationalmssociety.org/spotlight-exacerbations.asp

Dr. Geraghty referred plaintiff for an MRI, which showed results consistent with a diagnosis of multiple sclerosis. (Tr. 185-85, 191.) Dr. Geraghty remarked that, at that time, there was no drug treatment available to plaintiff, advised plaintiff to return to see him in four to six months and advised her to stay away from heat fluctuations. (Tr. 191.) In March of 1994, Dr. Geraghty noted that plaintiff had one possible "episode," but, as plaintiff had no recurrence of symptoms, Dr. Geraghty did not believe a definitive diagnosis of multiple sclerosis could be made. (Tr. 189.)

In August of 1996, plaintiff was seen by Dr. Fox, her treating physican. Dr. Fox's notes reflect that plaintiff had some weakness in her left hand, but her reflexes were normal. (Tr. 120.) He opined that her multiple sclerosis did "not make her incapacitated." (Tr. 119.) In September of 1996, plaintiff began treating with Dr. Au who noted an athetotic (spastic) left hand. (Tr. 104,181-82.) Plaintiff received treatment, and by January of 1997, her hand had improved. (Tr. 116, 179.)

Dr. Au diagnosed plaintiff with multiple sclerosis, relapsing-remitting type in November of 1996. (Tr. 103.) He recommended interferon injections to prevent "accumulation of the disease over time." (Tr. 103.) In April of 1997, Dr. Au noted that plaintiff was "very stable," ambulating without difficulty, with good dexterity and had no balance problems or tremors. (Tr. 113, 178.) Her one complaint was hair loss due to Avonex injections. (Tr. 113.) In November of 1997, Dr. Au noted that plaintiff had been doing well over the last six months with no relapses and that she did "tend to fatigue as the day wears on." (Tr. 109.) Plaintiff's one noted complaint was, again, hair loss due to the injections. (Tr. 109.) In November of 1997, Dr Au noted that plaintiff was "very stable" in terms of her multiple sclerosis and recommended that she not return for a check-up for six months. (Tr. 109-177.)

In a written decision dated June 6, 2003, the ALJ found that plaintiff was not disabled prior to her last insured date because she retained the residual functional capacity (RFC) to perform her past work. (Tr. 16-22.) Plaintiff requested administrative review and submitted

1  additional medical records.  (Tr. 9, 12.)  On March 12, 2004, the Appeals Council declined to
2  grant further review, making the ALJ's decision final.  (Tr. 5-7.)   The plaintiff filed a timely
3  appeal in this court on March 31, 2004.

**II. STANDARD OF REVIEW**

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole.  See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

///
///
///
///
///

## III.     DISCUSSION

At issue in this case is whether plaintiff is entitled to a period of disability and DIB benefits under sections 216(I) and 223 of the Social Security Act. Plaintiff's earning records reveal that she earned sufficient quarters of coverage to remain insured only through June 30, 1996. In order to be eligible for DIB benefits, plaintiff must show that she was under a disability on or before that date.

In her appeal, plaintiff bases her contention that the ALJ should have found that she was under a disability on her date last insured based on the following arguments. First, she contends that the ALJ erred in failing to give proper weight to Dr. Au's opinion. She claims that the Appeals Council should have remanded her case for a new hearing in light of the new evidence submitted after her hearing. She argues that the ALJ erred in failing to consider her obesity. Finally, she challenges the ALJ's finding that her symptom testimony was not credible.

.            Plaintiff argues that the ALJ failed to give proper weight to the testimony of her treating specialist, Dr. Au. "The opinion of a treating physican is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999). An ALJ may reject an uncontradicted opinion of a treating physician only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). When conflicting medical evidence is presented, however, the ALJ must resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Although the treating physician's opinion is given deference, the ALJ may reject the opinion of the treating physican in favor of a contradicting opinion of an examining physician, providing the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). The ALJ may satisfy this requirement by setting out a summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

///

Here, the ALJ properly found that Dr. Au's April 22, 2003 letter opining that plaintiff was disabled in 1996 was conclusory and unsubstantiated by relevant medical documentation. The ALJ pointed out that the relevant period for a disability determination was on or before June 30, 1996, when plaintiff's disability insurance expired. He then gave specific reasons for rejecting Dr. Au's opinion that plaintiff was disabled prior to that date. First, the ALJ found that the doctor's assessment in the April 2003 letter was conclusory because Dr. Au did not treat plaintiff prior to September of 1996 and had no objective medical evidence for that time period. Next, the ALJ noted that Dr. Au's April 2003 disability assessment was inconsistent with Dr. Au's treatment notes from that time period. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995.)   The medical reports during the relevant time period reflect that plaintiff told Dr. Au that over the last several years she noticed some numbness walking, but that lasted only a few hours or maybe a day. (Tr. 19.) In 1996, Dr. Au noted that plaintiff's condition was very stable, and she was responding very well to treatment. In light of the fact that Dr. Au was not plaintiff's treating specialist during the relevant period and the fact that Dr. Au's contemporaneous treatment notes are inconsistent with his 2003 opinion of disability, the ALJ gave clear and convincing reasons why he gave little weight to Dr. Au's conclusion that plaintiff was disabled on or before her date last insured. See Magallanes, 881 F.2d at 751.

The ALJ also based his determination that plaintiff was not disabled on or before June 30, 1996 on the opinion of Dr. Kangura, the medical expert, who heard plaintiff's testimony and reviewed her medical records. The opinion of a nontreating source may constitute substantial evidence supporting an ALJ's decision where it is consistent with other evidence in the record. See Thomas, 278 F.3d at 957. Dr. Kangura's opinion that the objective medical evidence did not show disability as of June 30, 1996 was based on both the lack of medical evidence in the record showing any functional limitations on plaintiff and the lack of evidence of plaintiff having regular medical care between 1993 and her date last insured. (Tr. 233.) The ALJ noted that Dr. Kangura's opinion was consistent with the statements by the state agency

physicians that there was insufficient medical evidence to show disability on or before June 30, 1996. Accordingly, Dr. Kangura's opinion, which is supported by the medical evidence in the record, is also substantial evidence which supports the ALJ' s decision. See Magallanes, 881 F.2d at 751.

Plaintiff next argues that the Appeals Council failed to properly consider the medical records that plaintiff submitted after the hearing was held. The record reveals that the Appeals Council noted that records from 1991 included a normal physical examination, including normal neurological, visual and motor tests, normal reflexes and normal coordination. (Tr. 6, 201-03.) The Appeals Council pointed out that records from 1994 indicated a normal physical examination, without any weakness. (Tr. 6,189-90.) The medical records show that plaintiff did not describe and her physicians did not note any significant functional limitations existing in 1995 or 1996. (Tr. 6.) Although the records did indicate some early suspicions that plaintiff had multiple sclerosis, diagnoses alone are not "per se disabling;" rather, "there must be proof of the impairment's disabling severity." Sample v. Schweiker, 694 F.2d 639, 642-43 (9th Cir. 1982.) As plaintiff's submitted medical records did not contain evidence of a disabling impairment, the Appeals Council did not err in deciding not to remand for hearing based on this evidence.

Plaintiff contends that the ALJ erred in failing to consider her obesity as a limiting impairment. Specifically, plaintiff states that her obesity, in conjunction with her multiple sclerosis, might have met or equaled a Listing. An impairment meets a Listing only when it manifests the specific findings described in the set of medical criteria for that listed impairment. See 20 C.F.R. § 404.1525(c); SRR 83-19. Medical equivalence to a Listing must derive from medical findings at least equal in severity and duration to the listed findings. See 20 C.F.R. § 404. 1526(a). Where a claimant has offered no evidence or theory, "plausible or otherwise," as to how her impairments combined to equal a listed impairment, the conclusion that no such disabling combination exists must be upheld. Lewis v. Apfel, 236 F.3d 503, 513

(9th Cir. 2001).

Here, Plaintiff pointed to no medical evidence indicating that she was limited by her obesity. The ALJ's discussion and evaluation of the evidence, including his reliance on the medical expert who reviewed all of plaintiff's records supports a finding that plaintiff offered no evidence that her obesity limited her. See Lewis, 236 F.3d at 513. In short, plaintiff offered no evidence either through her testimony or through her medical records to indicate that her obesity limited her ability to work in any way. Accordingly, the ALJ did not err in failing to consider this alleged condition.

Finally, plaintiff challenges the ALJ's finding that her symptom testimony was not credible. If there is medical evidence of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of the symptoms merely because they are unsupported by objective medical evidence. See Bunnell, 947 F.2d at 347-48. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. See Lester, 81 F.3d at 834. The ALJ must make a credibility determination with findings specific enough to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. See Thomas, 278 F.3d at 958-59. In weighing a claimant's credibility, the ALJ may consider her reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which she complains. See Thomas, 278 F.3d at 958-59.

The ALJ's credibility determination is supported by substantial evidence in the record. First, the ALJ pointed out that plaintiff received minimal medical care from 1993 until June 30, 1996, her date last insured. See Johnson, 60 F.3d 1428, 1434 (9th Cir. 1995)(stating that the ALJ may consider the conservative nature of treatments when evaluating subjective complaints). Contrary to plaintiff's claims of disability, the ALJ determined that plaintiff's ability in 1995 to care for her minor child, including driving him to school and attending school

1   functions and taking water aerobics served as evidence of her ability to work at that time.
2   (Tr.20, 100.)  Such activities indicated a higher functional ability than that claimed by plaintiff
3   during her testimony.  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
4   1999) (stating that daily activities inconsistent with allegations of disabling impairment proper
5   basis for discrediting claimant's credibility).  The ALJ noted plaintiff's near decade long delay
6   between her claimed onset of disability and her application for benefits.  See Fair v. Bowen, 885
7   F.2d 597, 604 n. 4 (9th Cir. 1989) (stating that an ALJ may use ordinary techniques of credibility
8   to evaluate plaintiff's believability).   The ALJ considered that plaintiff's physicians noted that
9   her medication improved her condition and caused no side effects and that her condition was
10  stable.    In considering plaintiff's husband's testimony that plaintiff needed a cane for stability,
11  the ALJ noted that the objective medical evidence revealed that plaintiff was never prescribed a
12  cane and that Dr. Au stated that plaintiff ambulated well and held her cane off the ground when
13  walking.  A conflict between a lay witness's statement and the objective medical evidence
14  provides the requisite rational for discrediting the statement of the lay witness See Lewis, 236
15  F.3d at 511.  In light of the plaintiff's reported daily activities, the lack of medical care and the
16  objective medical evidence, the ALJ's findings support his conclusion that plaintiff's symptom
17  testimony was not fully credible.
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///

11

## IV. CONCLUSION

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and
2. The Commissioner's cross motion for summary judgment is granted and;
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 29, 2005.

　　　　　　　　　　　　　　　　　　 _____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE